IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY PRICE, et al.,                          *

        Plaintiffs                              *

v.                                              *          Civil Case No. 14-763-JMC

BERMAN'S AUTOMOTIVE, INC.,                      *

        Defendant.                              *

                              * * * * * * *

## MEMORANDUM OPINION

Plaintiffs, Anthony Price and Virginia Aldrich, brought this action against Defendant, Berman's Automotive Inc. ("Berman's"), alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, Maryland's Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101–13-501, and fraud and negligent misrepresentation under Maryland law. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF Nos. 20, 22). Now pending before the Court is Berman's Motion for Summary Judgment. (ECF No. 27). The Court has also considered Plaintiffs' Responses in Opposition and Berman's Reply. (ECF Nos. 29, 30, 31). No hearing is necessary. Loc. R. 105.6 (D. Md. 2014). For the reasons that follow, Berman's Motion for Summary Judgment granted in part and denied in part.

I.      **Background**

On February 25, 2014, Plaintiffs purchased a 2003 Jeep Grand Cherokee from Berman's. Because they could not pay the full price of the Jeep in cash, they sought financing from the dealership. The Retail Installment Sales Contract ("RISC") that Plaintiffs signed provided for a $2000.00 down payment followed by 12 monthly installments of $882.31. By contrast, Plaintiffs

claim that prior to signing the RISC a salesman at Berman's informed them that the payment for the vehicle would be around $300.00 per month. Pls.' Resp. Ex. 1 at 13:15–14:9 ("Aldrich Dep.") (ECF No. 29-1). Similarly, Plaintiffs claim that prior to signing the RISC a finance manager also discussed with Mr. Price a payment schedule involving approximately 36 monthly installments of $300.00. Pls.' Resp. Ex. 2 at   23:13–20 ("Price Dep.") (ECF No. 29-2); Aldrich Dep. 16:6–17:7. When it came time to sign the RISC, Plaintiffs state that the finance manager, who Berman's has identified as Nathlee Miales, retained possession of the RISC and essentially flipped through the documents, directing Plaintiffs where to sign and initial. Aldrich Dep. 21:18–23:8. According to Plaintiffs, the manner in which Ms. Miales held the RISC "conceal[ed] the top part," of the documents. Aldrich Dep. 21:18–23:8. Thus, it was not until later that evening, once Plaintiffs had returned home, that they noticed that the RISC provided different terms than those which were verbally conveyed to Plaintiffs by Berman's salesman and finance manager. Plaintiffs contend that the discrepancy between the verbal representations regarding the monthly installments those provided in the RISC violated TILA and the MCPA, and constituted fraud and negligent misrepresentation under Maryland Law. Berman's now moves for summary judgment on each of Plaintiffs remaining claims.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court must view the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the burden of demonstrating the absence of any genuine dispute of material fact. *Pulliam Invest. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

However, a moving party who will not bear the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting the burden of raising a genuine dispute of fact by substantial evidence to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.   Analysis

#### A.   Truth in Lending Act

In this case, Plaintiffs allege that Defendants violated 15 U.S.C. § 1638(b)(1), which provides that the substantive disclosures "required under subsection (a) of this section shall be made before the credit is extended." Pursuant to "Regulation Z," through which TILA is implemented, a creditor must make those substantive disclosures "clearly and conspicuously in writing, in a form that the consumer may keep," and it must do so "before consummation of the transaction." 12 C.F.R § 226.17(a)–(b). With respect to timing, the official staff interpretation of Regulation Z further explains:

> The disclosure requirement is satisfied if the creditor gives a copy of the document containing the unexecuted credit contract and disclosures to the consumer to read and sign; and the consumer receives a copy to keep at the time the consumer becomes obligated. It is not sufficient for the creditor merely to show the consumer the document containing the disclosures before the consumer signs and becomes obligated. The consumer must be free to take possession of and review the document in its entirety before signing.

12 C.F.R. Pt. 226, Supp. I, Subpt. C § 17(b). In this case, Plaintiffs argue that the manner in which the finance manager retained control of the RISC and concealed the top part of the RISC as she instructed Plaintiffs where to sign and initial, prevented Plaintiffs from taking possession of and reviewing the document in its entirety before signing, such that the disclosures did not occur before Plaintiffs signed the RISC. Berman's argues that because Ms. Aldrich did not ask

the finance manager to move her hand and did not read or ask to read the RISC before signing it, Plaintiffs cannot establish that they were not free to do so. However, Plaintiffs' allegations concerning the finance manager's actions, paired with Plaintiffs' testimony concerning their relative lack of sophistication and the pressure they felt in the moment, are sufficient to allow a reasonable finder of fact to determine that Plaintiffs were not free to "take possession of and review the [RISC] in its entirety before signing." Summary judgment on Plaintiffs' TILA claim is thus inappropriate.

Berman's also argues that even if Plaintiffs can establish a TILA timing violation, summary judgment is nevertheless appropriate because, as a matter of law, Plaintiffs cannot establish damages. TILA provides for both actual damages and, for certain violations, statutory damages. 15 U.S.C. § 1640(a). Berman's argues that statutory damages are not available for the timing-based TILA violation alleged by Plaintiffs, and that Plaintiffs cannot establish that the alleged violation caused actual damages.

Berman's accurately notes that 15 U.S.C. § 1638(b)(1) is not included in the list of sections for which statutory damages are available, and although the Fourth Circuit has not addressed the issue, many courts have made clear that the list is to be strictly construed. *See e.g., Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 989, 992 (7th Cir. 2000) ("TILA receives a hypertechnical reading . . . omission from the list means no statutory damages"). Plaintiffs argue that the alleged TILA violation should not be viewed strictly based on timing, and should instead be construed as a substantive failure to disclose under 15 U.S.C. § 1638(a) for which statutory damages are available. However, in dismissing all of Plaintiffs' other alleged TILA violations, Judge Blake made clear that the only TILA violation that survived Berman's motion to dismiss was Plaintiffs' claim "asserting a TILA disclosure timing violation." (ECF No. 10 at 6).

Confronted with similar arguments, other Appellate Courts have rejected them as "back door" theories of statutory damages. *E.g., Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 868 (6th Cir. 2003) (citing *Brown*, 202 F.3d at 991). In light of Judge Blake's clear language construing Plaintiffs' claim and the guidance of caselaw from other circuits faced with similar arguments, the Court declines to view Plaintiffs' alleged TILA timing violation a substantive failure to disclose that would entitle Plaintiffs to statutory damages. Summary Judgment is therefore appropriate as to such damages.

However, as noted above, statutory damages are not the only damages available to Plaintiffs if they successfully prove Berman's violated TILA. With respect to actual damages, Plaintiffs' claim includes the loss of the $1,200.00 down payment they made to the dealership. Berman's argues that Plaintiffs have failed to establish a causal link between the alleged TILA timing violation and the loss of the down payment. Specifically, Berman's notes that the total price under the RISC is actually less than the total price would have been under the payment schedule that was orally represented to Plaintiffs, and that under both the RISC and the oral payment schedule, Plaintiffs would have been required to make the $1,200.00 down payment. Berman's contentions are misplaced. Plaintiffs' damages claim hinges not on the total cost of the car or the amount of the down payment, but on the amount of the monthly payment. Essentially, Plaintiffs argue that, had the TILA disclosures been timely made, they would have realized that the RISC provided for monthly payments in excess of $800.00, and because Plaintiffs were financially unable to meet such a payment schedule, they thus claim that had the disclosures been timely made, they would not have signed the RISC and would not have made the down payment.

Plaintiffs have thus adequately articulated a causal link between Berman's alleged TILA violation and Plaintiffs' loss of the $1,200.00 down payment.[1]

Berman's also argues that Plaintiffs cannot establish actual damages under TILA, because they have not established that they relied upon the TILA disclosures to their detriment. Berman's correctly notes that several circuits, including the Fourth Circuit have indeed stated that "[d]etrimental reliance is an element of a TILA claim for actual damages." *Jaldin v. ReconTrust Co.*, 539 F. App'x 97, 103 (4th Cir. 2013) (citing *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 (11th Cir. 2001)). However, the Fourth Circuit's statement was dicta, and its opinion contained no discussion of the rationale underlying the requirement. *Id.* Other Fourth Circuit caselaw pertaining to actual damages under TILA is less rigid. For example, in *Fisher v. American General Finance Co.*, the Fourth Circuit simply stated that, "[t]o establish actual damages from a TILA violation, a plaintiff must prove that he violation proximately caused his damages." *Fisher v. Am. Gen. Fin. Co.*, 52 F. App'x 601, 607 (4th Cir. 2002) (citing *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir. 2000)). Although detrimental reliance is one way to establish a causal link between a TILA violation and a plaintiff's actual damages, as explained below, it would be imprudent to impose such a requirement in this case, where the alleged TILA violation based on the timing, rather than the content, of the disclosures.

The nature of the TILA violations in the cases in which courts have required a plaintiff to show detrimental reliance to prove actual damages is instructive. Those cases involved alleged

---

[1] Berman's also argues that by seeking a return of their $1,200 down payment, Plaintiffs essentially seek to rescind the RISC. Berman's has not, however, cited any caselaw in support of the contention that a plaintiff cannot recover actual damages under TILA where the practical effect of receiving those damages places Plaintiffs in the same position as if the contract were rescinded. Rather, Congress passed TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Plaintiffs in this case are precisely the type of people TILA was passed to protect, and this Court will not construe the damages available under TILA so narrowly as to prevent Plaintiffs from recovering the down payment they contend they never would have made had Berman's complied with TILA.

TILA violations based on the content of the disclosures, as opposed to the timing of the disclosures. *See e.g., Jaldin*, 539 F. App'x at 103 (failure to disclose the name of the owner of the debt); *Turner*, 242 F.3d at 1024 n.2 (failure to disclose the number of payments, amount of payments, amount financed, total finance charge, and total sales price); *Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 435 (5th Cir. 2000) (non-itemization of acquisition fee within disclosures). Where a violation is content based, it makes sense to require a plaintiff to prove that he suffered damages because he relied to his detriment on the inadequate content of the disclosures. For example, in the context of a content based TILA claim, the Eighth Circuit has explained that to establish actual damages, a plaintiff must show that: "(1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price. *Peters*, 220 F.3d at 917. By contrast, it defies common sense to require a plaintiff to rely on the substance of a TILA disclosure when the alleged TILA violation is solely timing-based. As Berman's aptly notes, "because Plaintiffs did not read the RISC, they could not have relied on the TILA disclosures contained therein." Def's Mot. 15. In this case, the crux of Plaintiffs' damages claim is that they would not have signed the contract had the TILA disclosures been timely made, and would not have made the down payment. For Plaintiffs to successfully establish the timing violation they allege, and the damages they claim resulted therefrom, they cannot have read, let alone relied upon, the TILA disclosures. Detrimental reliance thus cannot be required in cases where the sole alleged TILA violation is one of timing. Plaintiffs' allegations are thus sufficient to allow a reasonable finder of fact to determine that Plaintiffs' suffered actual damages that were caused by Berman's alleged TILA violation, and summary judgment on Plaintiffs' TILA claim is thus inappropriate.

## B.      Fraud and Negligent Misrepresentation

Plaintiffs also allege that Berman's committed fraud and negligent misrepresentation under Maryland law by orally representing that Plaintiffs' monthly payment would be approximately $300.00 and then providing Plaintiffs with an installment contract that required monthly payments in excess of $800.00. To succeed on a claim for fraud under Maryland law, Plaintiffs must prove by clear and convincing evidence that:

> (1) the defendant made a false representation to the plaintiff,
> (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth,
> (3) the misrepresentation was made for the purpose of defrauding the plaintiff,
> (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and
> (5) the plaintiff suffered a compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005). To succeed on a claim for negligent misrepresentation under Maryland law, Plaintiffs must prove that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement;
> (2) the defendant intended that his statement would be acted upon by the plaintiff;
> (3) the defendant had knowledge that the plaintiff would probably rely on the statement, which, if erroneous, would cause loss or injury.
> (4) the plaintiff, justifiably, took action in reliance on the statement; and
> (5) the plaintiff suffered damage proximately caused by the defendant's negligence

*Goldstein v. Miles*, 859 A.2d 313, 332 (Md. Ct. Spec. App. 2004).

### 1.      Parol Evidence Rule

As a preliminary matter, Berman's argues that because the transaction at issue in this case involved the sale of goods, the parol evidence rule, codified in Maryland's Uniform Commercial Code § 2-202, bars evidence of Berman's alleged oral statements.[2] Md. Code Ann., Com. Law § 2-202. Maryland courts have often noted the "thorny issues" presented by the intersection of the

---

[2] The parol evidence rule set forth in § 2-202 does not alter the common law fraud exception to the parol evidence rule. *See* Md. Code Ann., Com. Law § 1-103(c); 1 White, Summers, & Hillman, Uniform Commercial Code § 3:15 (6th ed.).

parol evidence rule and tort actions based on alleged oral statements preceding a contract. *Greenfield v. Heckenbach*, 797 A.2d 63, 66 (Md. Ct. Spec. App. 2002) (citing *Weisman v. Connors*, 540 A.2d 783, 797 n.4 (Md. 1988)). However, as this Court has previously stated, parol evidence is "generally admissible to prove fraud." *Sagent Technology, Inc. v. Micros Systems, Inc.*, 276 F.Supp.2d 464, 468 (D. Md. 2003); *see also Parker v. Columbia Bank*, 604 A.2d 521, 529 (Md. Ct. Spec. App. 1992) ("Accordingly, we do not believe that, in Maryland, the parol evidence rule bars evidence as to any assertedly fraudulent representations."). In determining whether to admit parol evidence to support a fraud or negligent misrepresentation claim, Maryland courts distinguish between situations in which parol evidence is generally inconsistent with the presence of a merger or integration clause, and those in which parol evidence is explicitly contradicted by a specific contract term. *Greenfield*, 797 A.2d at 75. Under Maryland law, in both fraud and negligent misrepresentation cases, the presence of a merger or integration clause alone does not serve to bar parol evidence. *Id.* at 76, 81. However, in fraud cases where the alleged prior oral statement is inconsistent with a specific term in the written agreement, in order to be admitted, the promisee must show that the promisor's prior oral misrepresentations were intentional. *Sagent Technology, Inc.*, 276 F.Supp.2d at 468 (citing *Creamer v. Helferstay*, 448 A.2d 332, 337 (Md. 1982). Fraudulent intent may be inferred from: (1) the situation of the parties; (2) the activity of the promisor in procuring the transaction; (3) a short time period between the promise and the failure to perform; and (4) the promisor's subsequent conduct. *Sagent Technology, Inc.*, 276 F.Supp.2d at 468; *see also First Union Nat'. Bank v. Steele Software Sys. Corp.*, 838 A.2d 404, 439 (Md. Ct. Spec. App. 2003). In this case, Plaintiffs have cited sufficient evidence pertaining to the situation of the parties and the activity of Berman's in procuring the transaction that a reasonable finder of fact could conclude that Berman's possessed

a fraudulent intent. Accordingly, the parol evidence rule does not prohibit consideration of Berman's alleged prior oral statements in the context of Plaintiffs' fraud claim.

In *Creamer*, the Maryland Court of Appeals "reserved judgment on whether the parol evidence rule precluded a tort action based on a negligent misrepresentation that contradicted a term of the contract between the parties to the tort suit. [It] there affirmed the related principle that in a suit for rescission of a contract the parol evidence rule precludes the granting of relief for unintentional representations preceding the contract which conflict with the terms of the contract." *Weisman*, 540 A.2d at 797 n.4. In *Weisman*, the Court of Appeals again declined to confront the issue, but it nevertheless noted that "[s]ome authorities indicate that oral precontractual representations cannot support an action in negligent misrepresentation if the representation varies or contradicts the terms of a subsequent written contract" *Id.* (citing *Call Carl, Inc. v. BP Oil Corp.*, 554 F.2d 623, 630 (4th Cir. 1977)).[3] The Court of Appeals' discussion in *Creamer* and its footnote in *Weisman* both counsel against the introduction of parol evidence to support a negligent misrepresentation claim when the alleged oral statements are explicitly contradicted by a contract term, since—by definition—fraudulent intent is absent from a negligent misrepresentation claim. Without evidence of Berman's alleged prior oral statement, Plaintiffs negligent misrepresentation claim cannot withstand Berman's motion for summary judgment.

### 2.     Reasonable Reliance.

In support of its motion for summary judgment on Plaintiffs' fraud claim, Berman's also argues that faced with terms in the RISC that directly contradicted Berman's alleged oral

---

[3] Subsequent to *Weisman*, the Court of Special Appeals in *Greenfield* voiced its disagreement with the Fourth Circuit's statement in *Call Carl* that under Maryland law, fraud is not an exception to the parol evidence rule. *Greenfield*, 797 A.2d at 75. By contrast, the *Greenfield* court did not voice its disagreement with *Call Carl*'s similar treatment of negligent misrepresentation and the parol evidence rule. *See id.* Accordingly, there is no reason to believe that the Fourth Circuit's statements in *Call Carl* regarding negligent misrepresentation and the parol evidence rule are inconsistent with Maryland law.

statement, Plaintiffs reliance upon that statement was not reasonable as a matter of law. Berman's argument, however, ignores Judge Blake's prior statement in this case that, "the Court of Appeals of Maryland appeared to endorse a fact-based inquiry instead of a per se rule," with respect to whether, in an action for fraud, reliance on a misrepresentation is unreasonable where the misrepresentation is directly contradicted by a contractual term. (ECF No. 10 (citing *James v. Goldberg*, 261 A.2d 753 (Md. 1970))). Moreover, the authority Berman's cites in support of its argument involved situations in which the plaintiff had knowledge of the contradictory term and was in possession of the written contract. *See Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 126 (4th Cir. 1990) ("The facts of our case, the insurance companies' reliance on oral representations when contrary written papers were *in their possession*, are not different from *Call Carl* and *James* . . . the plaintiff had no right to rely upon the false oral representation in the face of the contrary written terms of the lease *of which he had knowledge*") (emphasis added). In this case, Plaintiffs TILA claim hinges upon their allegation that they were unable to take possession of and review the RISC in its entirety before signing. Plaintiffs have set forth sufficient evidence to survive summary judgment on their TILA claim, and that same evidence precludes the Court from determining that Plaintiffs' reliance on Berman's alleged oral misrepresentation was unreasonable due solely to the presence of the the contradictory term in the RISC.

Rather than viewing the presence of a contradictory contract term as an absolute bar to reasonableness, Maryland courts instead consider it as one factor in considering whether reliance was reasonable, given the context of the transaction. *See Parker*, 604 A.2d at 530 ("The terms of a written contract can, of course, be used as evidence of the reasonableness of the [Plaintiff's] reliance upon alleged misrepresentations contrary to those terms."). In addition to Plaintiffs' allegation that they were prevented from taking possession of and reviewing the RISC, Plaintiffs

have set forth evidence regarding their relative lack of sophistication, the pressure they felt in the moment, and the fact that they did not read the contract. In light of that evidence, a reasonable finder of fact could conclude that it was reasonable for Plaintiffs to rely on Berman's alleged oral misrepresentations regarding the payment schedule, despite the fact that it was contradicted by the RISC, and summary judgment on Plaintiffs' fraud claim is thus inappropriate.

### C.      Maryland's Consumer Protection Act

Finally, Plaintiffs contend that Berman's alleged oral misrepresentations concerning the payment schedule violated the MCPA, which bars "unfair and deceptive trade practice[s]." Md. Code Ann., Com. Law § 13-303. Under the MCPA, such practices include false oral statements which have "the capacity, tendency, or effect of deceiving or misleading consumers," and deception, fraud, misrepresentation, and knowing concealment in connection with the promotion or sale of any consumer goods. Md. Code Ann., Com. Law § 13-301(1), (9). In support of its motion for summary judgment on Plaintiffs' MCPA claim, Berman's raised only the parol evidence and reasonable reliance arguments discussed *supra*. However, since fraud in connection with the promotion or sale of any consumer goods constitutes a violation of § 13-303, and since Berman's is not entitled to summary judgment on Plaintiffs' fraud claim, Berman's is also not entitled to summary judgment on Plaintiffs' MCPA claim.

## IV. Conclusion

For the foregoing reasons, Berman's Motion for Summary Judgment is GRANTED as to Plaintiffs' claim for statutory damages under TILA and as to Plaintiffs' negligent misrepresentation claim, and DENIED as to Plaintiffs' actual damages claim under TILA and Plaintiffs' claims under the MCPA and for common law fraud.  A separate order follows.

Dated: September 28, 2015                        _____/s/_____
                                                 J. Mark Coulson
                                                 United States Magistrate Judge